**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Case No. 25-40041-lsg |
| LONERO ENGINEERING CO., INC., | Chapter 11 |
| Debtor. | Hon. Lisa S. Gretchko |
| _____/ | |

**DECLARATION OF VINCENT LONERO IN SUPPORT**
**OF DEBTOR'S PETITION AND FIRST DAY MOTIONS**

In support of the above-captioned Debtor's Chapter 11 Petition and its First Day Motions (defined below), I, Vincent Lonero, declare as follows:

1.    I am the majority shareholder and president of Lonero Engineering Co., Inc. (the "Debtor"), a Michigan corporation, with its principal place of business at 2050 Stephenson Hwy., Troy, Michigan 48083 (the "Real Estate").

2.    The Debtor was established in 1951 to provide, among other things, precision machining solutions for complex close-tolerance applications. This includes patented tooling for deep rolling automotive crankshafts for internal combustion engines. The Debtor sells this tooling to all of the major automotive manufacturers around the world.

3.	The tooling that the Debtor makes is perishable.  Engine plants around the world place orders for these items on a weekly and monthly basis as their volumes dictate.  Tooling is shipped to the customers via UPS, FEDEX and DHL.

4.	Upon information and belief, if the Debtor does not continue as a going concern many major engine manufacturing lines will be forced to shut down limiting the production of many automobiles. These plants are in the USA, Mexico, Germany, Spain, England, Romania, Turkey, France, South Korea, Japan and China.

5.	The Debtor has one major competitor based in Germany.

6.	The Debtor filed for bankruptcy protection under Chapter 11 of the United States Code (the "Bankruptcy Code") on January 3, 2025 (the "Petition Date").

7.	I am responsible for devising and implementing the Debtor's business plans and strategies, overseeing the Debtor's finances and operational and legal affairs, supervising the maintenance of its books and records, and overseeing the manufacturer and sale of firearms.  I have been involved in the Debtor's restructuring process (the "Restructuring Process"), which includes (i) participating in the development, negotiation and implementation of various strategic alternatives for restructuring, and reducing or modifying the Debtor's indebtedness, (ii) managing professionals engaged by the Debtor in connection with the Restructuring Process,

and (iii) supervising the preparation of documentation needed to implement the Restructuring Process.

8.      Except as otherwise indicated herein, all facts set forth in this Declaration are based upon my personal knowledge, my discussions with the Debtor's personnel and professionals, my knowledge and review of relevant documents including the Debtor's books and records, and     my opinion based on my experience, knowledge, and information concerning the Debtor's operations and financial condition.  If called upon to testify, I would testify competently to the facts set forth in this Declaration.

9.      The Debtor has requested certain relief in "first day" applications and motions filed with the Court (collectively, the "First Day Motions") in order to minimize potential adverse effects of the bankruptcy filings and to maximize the value of the estate.  I submit this Declaration to assist the Court and parties-in-interest in understanding the circumstances that led to the commencement of this Chapter 11 case and in support of the Debtor's voluntary petition and First Day Motions.

10.     I believe the relief sought in each of the First Day Motions is (i) necessary for the Debtor to make a successful transition to, and reorganize, in Chapter 11 with minimal interruption or disruption to its business, and (ii)

constitutes a key factor in maximizing and preserving the value of the Debtor's estate.

<u>**CAUSES OF BANKRUPTCY FILING**</u>

11.    Beginning with the so-called electric vehicle ("EV") mandates, auto manufacturers began shifting production from gasoline vehicles to EVs.  As a result, the major automotive companies stopped making investments into internal combustion engine lines with the rise of the EV market.

12.    Because approximately ninety percent (90%) of the Debtor's business involves manufacturing tools and/or deep rolling for crankshafts in internal combustion vehicles, the EV mandates had an extremely negative effect on the Debtor.

13.    The Debtor's gross sales declined from $4,028,913 in 2020 to $2,961,307 in annual sales through November 2024.

14.    During this period of contracting sales, costs of materials and borrowing increased.

15.    The Debtor believes that the EV environment has changed world-wide, and it anticipates the automotive internal combustion engine market returning to more normal levels with many new engine lines in 2025 and beyond.  The major automotive manufacturers' existing engine lines must be retooled or replaced with new technology, including hybrid engines. To wit, the Debtor has approximately

$900,000 in back orders for its products and services, but lacks the financial wherewithal to fulfill those orders under its current debt structure.

16.     Moreover, the Debtor went out of formula with Bridge Business Credit f/k/a Great Lakes Business Credit ("Bridge"), who will allege it is the Debtor's senior secured creditor; and, as a result, Bridge declared a default under its loan documents. Thereafter, the Debtor and Bridge entered into a forbearance agreement, which expired on November 30, 2024, and required the appointment of a receiver in the event of a further default.

17.     When the forbearance agreement with Bridge terminated and the Debtor did not pay Bridge, Bridge had Theodore Tzafaroglou of New England Consulting Partners (the "Receiver") appointed as the receiver over the Debtor and its non-operating subsidiary, Lonero Global Enterprise, Inc., on December 17, 2024, in Bridge Business Credit v. Lonero Engineering Co., Inc., et al., Case No. 2024-21156-CB (Oakland County Circuit Court, State of Michigan).

18.     When the Debtor learned that the Receiver intended to liquidate and close the Debtor's business, rather than sell the Debtor's business as a going concern, the Debtor filed this Case to reorganize and/or sell its business. *See* **Exhibit A**.

## NATURE OF DEBT

19.     A copy of the State of Michigan's report of filings under the Uniform Commercial Code ("UCC") dated December 31, 2024, is attached as **Exhibit B**, which reflects the UCC-1 filings filed against the Debtor as of December 29, 2024.

20.     Upon information and belief, Bridge may assert a first priority security interest in substantially all of the Debtor's assets in an amount equal to $2,240,313.84[1].  Upon information and belief, Bridge's UCC-1 financing statement asserting an all-asset lien is junior to the UCC-1 financing statement of the United States Small Business Administration (the "SBA"), but the SBA subordinated its priority position to Bridge.

21.     In addition to its security interest in the Debtor's Cash Collateral, upon information and belief, Bridge also has a first priority mortgage in Debtor's Real Estate.

22.     In November 2024, the Debtor obtained a Sale-Leaseback Strategy & Analysis (the "Sale-Leaseback Report") from Signature Associates, which valued the Real Estate at $1,770,000.  A copy of the Sale-Leaseback Report is attached as **Exhibit C**.

23.     Moreover, upon information and belief, Bridge will assert a first priority security interest in the Debtor's equipment.  The Debtor has estimated the

---

[1] As of December 2, 2024.

value of all of its equipment at $1,000,000. As a result, the Debtor estimates that the total value of all of the assets securing the alleged obligation to Bridge is $4,465,969, which is far in excess of the $2,240,313.84 Bridge may assert that it is owed by the Debtor. Thus, there exists an equity cushion for Bridge of approximately $2,225,655.

24. Upon information and belief, the SBA may assert that it holds a second priority lien encumbering substantially all of the Debtor's assets, securing indebtedness of approximately $2,000,000 owed to it by the Debtor pursuant to a pre-Petition Date economic injury disaster loan ("EIDL"). Upon information and belief, while the SBA's UCC-1 financing statement is superior to the UCC-1 financing statement filed by Bridge, the SBA has subordinated its senior position to Bridge.

25. No other party-in-interest asserts a perfected interest in the Debtor's Cash Collateral.

26. Nothing in this Declaration may be construed as an admission by the Debtor as to any liability or the amount of any indebtedness, or as an admission by the Debtor with respect to the validity, extent, priority, and/or enforceability of any lien against any of the Debtor's assets.

## REQUEST FOR USE OF CASH COLLATERAL

27.     Contemporaneously with the filing of this Declaration, the Debtor has filed its *Motion for Entry of an Order Authorizing the Debtor to Use Cash Collateral and Granting Adequate Protection* (the "Cash Collateral Motion").

28.     As of the Petition Date, the Debtor, without admission, believes that its cash collateral, as defined in 11 U.S.C. §363, (the "Cash Collateral") consisted of the following collateral:

a.      Cash of approximately $28,000;
b.      Accounts receivable of approximately $630,020; and
c.      Inventory of $1,037,949.

29.     The Debtor requires the use of Cash Collateral to make such payments as are necessary for the continuation of its business as shown in the budget attached hereto as **Exhibit D** and to the Cash Collateral Motion as Exhibit F, (the "Budget").

30.     The Budget projects the Debtor's anticipated revenue and expenses and reflects the amount of funds the Debtor must spend on its operations over the thirteen-week period. The projected revenue and expenses in the Budget are based upon historical financial data.

31.     Over the course of the thirteen-week period, the Debtor expects to generate net cash flow of $103,959.  Id.

32.     As shown in the Budget, the Debtor must be authorized to use $262,065 of Cash Collateral to avoid immediate and irreparable harm before the date of the

final hearing or the date this Order becomes a final order (which the Debtor assumes is twenty-one (21) days of Cash Collateral usage).

33. During the first twenty-one (21) days of this Case, the Debtor projects a $38,784 decline in cash collateral. Id. As a result, there will be a modest diminution in Cash Collateral over the first twenty-one (21) days of this Case, which is more than offset by the substantial equity cushion.

34. Without the ability to make the payments as set forth in the Budget, the Debtor will be unable to reorganize in Chapter 11 and will be forced to shut down. The majority of the Debtor's value arises from the value of its ongoing operations. If the Debtor is unable to operate within the Chapter 11 environment, the Debtor's value will be destroyed. Accordingly, authorizing the Debtor to use Cash Collateral as set forth in the Budget is in the best interests of all creditors and parties-in-interest.

## WAGE MOTION

35. The Debtor employs twenty-two (22) individuals (collectively, the "Employees"): thirteen (13) Employees are paid hourly and nine (9) are salaried.

36. The vast majority of the value of Debtor's business arises from its ongoing operations. The Employees are instrumental in allowing the Debtor to continue operating as a going concern.

37. Before the Receiver's appointment, and in the ordinary course of business, the Employees were paid weekly (the "Wages") on Fridays for the previous week's labor (*i.e.*, the Employees are paid five (5) days in arrears).

38. Since the Receiver has been appointed, none of the Employees has been paid since December 20, 2024, and none of the hourly Employees has performed any work for the Debtor since they were furloughed on December 23, 2024 by the Receiver.

39. As a result, on the Petition Date, the Debtor owed the Employees Wages for the period beginning December 16, 2024 through December 22, 2024, which should have been, but was not, paid by the receiver to the Employees on December 27, 2024. The gross amount of the prepetition Wages due the Employees is $28,364.06 (the "Prepetition Payroll"). *See* **Exhibit E**.

40. I am informed that of the Employees, eight (8) Employees are Insiders as defined in section 101(31)(B). These individuals are the following:

| Name | Hourly/Salary | Gross Pre-petition Payroll Due | Relationship to the Debtor |
|---|---|---|---|
| Amanda Cudney | Hourly | $301.92 | Niece of majority shareholder |
| Tod Lonero | Salaried | 442.50 | Brother of majority shareholder |
| Vincent Lonero | Salaried | $500.00 | Majority shareholder and Debtor's President |

| | | | |
|---|---|---|---|
| John Falendysz | Salaried | $475.77 | Cousin of majority shareholder |
| Deborah Lonero | Salaried | $250.00 | Wife of majority shareholder |
| John Sgalia, Jr. | Salaried | $2,803.85 | Nephew of majority shareholder |
| Susan Hettich | Salaried | $301.92 | Sister-in-law of majority shareholder |
| Phillip Varvatos | Salaried | $2,987.31 | Debtor's Chief Financial Officer |

41.     Amanda Cudney, Deborah Lonero, Susan Hettich, and John Sgalia, Jr. will not be continuing in the Debtor's employ after the Petition Date.

42.     Additionally, I voluntarily reduced my annual salary from $643,723 to $500 per week on April 12, 2024 plus occasional supplemental payments to cover living expenses.

43.     The Employee Wages are paid using ADP as Debtor's payroll provider at a cost of approximately $156 per week (the "Payroll Costs").

44.     The Debtor also provides the Employees with (i) medical insurance through Priority Health at a cost of $28,000 per month and (ii) vision, dental, and life insurance through Principal Insurance at a cost of approximately $5,700 per month (collectively the "Health Benefits").

45.     In addition to the Health Benefits, the Debtor provides its Employees with access to a 401K retirement plan through Nationwide (the "Retirement Plan").

The Debtor matches the first 3% of employee contributions at 100% and the next 2% of employee contributions at 50%. Thus, if an Employee contributes at least 5%, the Debtor matches 4%. In addition to the employee matching, the Debtor pays administrative fees of approximately $2,500 per year plus approximately $700 in quarterly fees for the Retirement Plan.

46.    Moreover, the Debtor has an accrued paid time-off/vacation plan, which entitles Employees to between one and four weeks of paid vacation time based on the number    of years the Employee has been employed by the Debtor (the "Paid Time Off"). The aggregate dollar amount of accrued vacation time owed for all Employees' Paid Time Off is $6,605.00. *See* **Exhibit F**.

47.    Aside from the Health Benefits, the Retirement Benefits, and the Paid Time Off (collectively, the "Employee Benefits"), the Debtor does not provide the Employees with other fringe benefits.[2]

48.    Wages, Payroll Costs, Employee Benefits, Fringe Benefits, and Auto Allowance will be collectively referred to as the "Employee Obligations".

49.    The Debtor is required by law to withhold from its Employees' Wages amounts related to federal, state, and local income taxes, as well as social security

---

[2] Prior to the Petition Date, the Debtor has provided certain Employees (including Insiders) with auto insurance. That benefit has been discontinued.

and Medicare taxes (collectively, the "Withholding Taxes") and to remit the same to the appropriate taxing authorities (collectively, the "Taxing Authorities").

50.    The Debtor is also required to make matching payments from its own funds on account of social security and Medicare taxes, and to pay, based on a percentage of gross payroll and subject to state-imposed limits, additional amounts to the Taxing Authorities for, among other things, state and federal unemployment insurance (together with the Withholding Taxes, the "Payroll Taxes").

51.    No payment to any employee for Pre-Petition Wages will exceed $15,150 which is the priority amount permitted under 11 U.S.C. § 507(a)(4).

52.    If the Debtor is unable to pay Employee Obligations as soon as possible, the Employees may suffer extreme personal hardship and be unable to pay their daily living expenses since the Prepetition Payroll was due on December 27, 2024, but was not paid.

53.    Furthermore, if the Debtor does not pay the Employee Obligations, Employees may quit or walk off the job leaving the Debtor without the ability to resume operations and crippling the Debtor's reorganization at the outset of the proceeding.

54.    Given the uncertainty of the Chapter 11 process and the upheaval which the transition to Chapter 11 may have on Employees, it is important for the Debtor

to retain these experienced Employees and maintain the goodwill of these Employees so that Debtor's business operations are not adversely harmed.

## UTILITIES MOTION

55.     The Debtor's utility providers (each a "Utility" and collectively the "Utilities") are responsible for providing the Debtor with, *inter alia*, water, sewer, electricity, gas, telephone, and waste-removal services (collectively the "Services"). The Debtor's business cannot operate without the Services and any discontinuation of the Services, even for a brief period, would severely disrupt the Debtor's business operations, impair the Debtor's ability to achieve an orderly and successful reorganization, and with the Michigan winter temperatures, possibly damage     the Debtor's Real Estate.

56.     Prior to the Receiver's appointment, the Debtor was not current with its Utility Companies and, upon information and belief, is not current with the Utility Companies today.

57.     Further, during October 2024, the Debtor entered into a payment plan with DTE Energy ("DTE") under which the Debtor paid its outstanding bill at the rate of $5,000 per month toward the overdue balance in addition to paying its current bill, which was next due on Petition Date.  The Debtor made payments within the ninety (90) days before the Petition Date totaling $10,000 to DTE under its

repayment agreement with DTE and continued to owe DTE approximately $30,617.99 on the Petition Date.

58. The Debtor anticipates that it will be able to pay all post-petition utilities charges on a timely basis as provided in the Budget.

59. To provide the Utility Providers with adequate assurance of payment for future services, the Debtor proposes to deposit $7,000.00 (the "Adequate Assurance Deposit") into a newly created, segregated debtor-in-possession account (the "Utility Deposit Account") for the benefit of Utility Providers. This Adequate Assurance Deposit is equal to the estimated aggregate cost for one month of utility services.

60. As further adequate assurance of performance under section 366, the Debtor proposes to waive all claims against Utility Companies arising under section 547 (the "Preference Waiver").

61. The Debtor intends to pay post-petition obligations owed to the Utilities in a timely manner from operating revenues, fund the Adequate Assurance Deposit, and provide the Preference Waiver, which the Debtor believes provides sufficient adequate assurance of future performance. In addition, the Debtor proposes a process to consensually resolve any disputes, and if that process is unsuccessful, to have this Court determine the appropriate adequate assurance of performance.

62.     Declarant says nothing further.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_/ s / Vincent Lonero_____
Vincent Lonero

Dated:  January 6, 2024

# Exhibit A

December 30, 2024

Dear Team Member

Please be advised I have been appointed as Court Appointed Receiver for Lonero Engineering as of December 17, 2024.

Additionally, please be advised that effective December 23, 2024, the funding source for the payroll of the Company has made the decision to cease funding payroll. At this time, I do not have a replacement funding source to be able to assure that you will be paid for future work. As a result, December 30, 2024, will be the last day of employment for all team members.

The current plan being worked on by the funding source and myself is to find a way to pay Team Members for time worked through December 23, 2024, when funds are available. Employee benefits will be terminated as December 30, 2024, as well.

On behalf of the Company, I appreciate all the effort and professionalism you have demonstrated during your tenure at the Company.

Ted Tzafaroglou

Court Appointed Receiver

Lonero Engineering Company

# Exhibit B



# MICHIGAN DEPARTMENT OF STATE

Uniform Commercial Code
P.O. Box 30197
Lansing, Michigan 48909
www.michigan.gov/sosucc

**Date:** December 31, 2024
**Customer ID:** 15230
**Reference No:** S-20241231000334
**Debtor Name:** Lonero Engineering Co Inc.
**Certified Through:** 12/29/2024

**Format:** Certificate and Copies
**Date Range:** N/A
**City Limited:** N/A
**Search Criteria:** Unlapsed Financing statements only

---

**Filing Type:** UCC-1 Initial Financing Statement
**Filing Date:** 07/03/2018 12:51 PM

**Filing Number:** 20180703000535-4
**Lapse Date:** 07/03/2028

**Filing Type:** UCC-3 Termination
**Filing Date:** 01/05/2021 04:15 PM

**Filing Number:** 20210105000965-9

**Filing Type:** UCC-3 Continuation
**Filing Date:** 06/30/2023 10:38 AM

**Filing Number:** 20230630000234-5

**Filing Type:** UCC-3 Termination
**Filing Date:** 07/17/2023 10:35 AM

**Filing Number:** 20230717000146-9

**Debtors**
LONERO ENGINEERING CO., INC.

2050 STEPHENSON HIGHWAY
Troy, MI 48083 USA

**Secured Parties**
TCF NATIONAL BANK

2118 E. BIG BEAVER RD.
SUITE A
Troy, MI 48083 USA

---

**Filing Type:** UCC-1 Initial Financing Statement
**Filing Date:** 07/17/2020 08:53 PM

**Filing Number:** 20200717001228-2
**Lapse Date:** 07/17/2025

**Debtors**
Lonero Engineering Co., Inc.

2050 Stephenson Hwy
Troy, MI 48083 USA

**Secured Parties**
U.S. Small Business Administration

2 North Street, Suite 320
Birmingham, AL 35203 USA

---

**Filing Type:** UCC-1 Initial Financing Statement
**Filing Date:** 12/01/2020 10:30 AM

**Filing Number:** 20201201000271-8
**Lapse Date:** 12/01/2025

---

**Filing Type:** UCC-3 Amendment Secured Party Change
**Filing Date:** 09/20/2021 04:23 PM

**Filing Number:** 20210920000710-2

**Filing Type:** UCC-3 Amendment Secured Party Change
**Filing Date:** 06/01/2023 03:06 PM

**Filing Number:** 20230601000629-7

**Debtors**

Lonero Engineering Co., Inc.

2050 Stephenson Highway
Troy, MI 48083 USA

**Secured Parties**

Great Lakes Business Credit, LLC

1700 West Big Beaver Road
Suite 235
Troy, MI 48084 USA

Great Lakes Business Credit, LLC

900 Wilshire Drive Suite 305
Troy, MI 48084 USA

Bridge Business Credit, LLC

900 Wilshire Drive, Suite 305
Troy, MI 48084 USA

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

Michigan Department of State - Uniform Commercial Code

**Filing Number: 20180703000535-4**

Filing Date and Time: 07/03/2018 12:51 PM

Total Number of Pages: 1

*(This document was filed electronically)*

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|
| **Denise Ann Pietras** |
| B. E-MAIL CONTACT AT FILER (optional) |
| **dap@h2law.com** |
| C. SEND ACKNOWLEDGEMENT TO: (Name and Address) |
| **Denise Ann Pietras** |
| **450 W 4th St** |
| **Royal Oak, MI 48067 USA** |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only <u>one</u> Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **LONERO ENGINEERING CO., INC.** | | | | |
| OR | 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS **2050 STEPHENSON HIGHWAY** | CITY **Troy** | STATE **MI** | POSTAL CODE **48083** | COUNTRY **USA** |

2. DEBTOR'S NAME: Provide only <u>one</u> Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR | 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only <u>one</u> Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **TCF NATIONAL BANK** | | | | |
| OR | 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS **2118 E. BIG BEAVER RD.  SUITE A** | CITY **Troy** | STATE **MI** | POSTAL CODE **48083** | COUNTRY **USA** |

4. COLLATERAL: This financing statement covers the following collateral:
This FINANCING STATEMENT covers in all of the Debtor's personal property, whether now or hereafter owned, existing, arising or acquired and wherever located, including all of the Debtor's right, title and interest in and to the following:

All of Debtor's personal property, including without limit accounts (including health-care-insurance receivables), chattel paper (whether tangible or electronic), general intangibles (including payment intangibles and software), instruments (including promissory notes), documents, deposit accounts, money, investment property, letters of credit, letter of credit rights, supporting obligations (including guaranties), goods (including inventory, equipment, and fixtures) and all imbedded software, licenses to use the property or rights of any other person, copyrights, patents, trademarks, trade names, refunds and claims for refunds of taxes, and commercial tort claims now or later specifically identified by Debtor.

<u>Defined Terms</u> - All terms used herein which are not specifically defined herein shall have the meaning assigned to such terms in the Uniform Commercial Code in effect in the State of Michigan as of the date hereof.

5. Check <u>only</u> if applicable and check <u>only</u> one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

| 6a. Check <u>only</u> if applicable and check <u>only</u> one box: | 6b. Check <u>only</u> if applicable and check <u>only</u> one box: |
|---|---|
| ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien ☐ Non-UCC Filing |

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
**#013957.00047**

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

Michigan Department of State - Uniform Commercial Code

**Filing Number:** 20200717001228-2

Filing Date and Time: 07/17/2020 08:53 PM

Total Number of Pages: 1

*(This document was filed electronically)*

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Corporation Service Company  800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
FilingDept@cscinfo.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**
Corporation Service Company
801 Adlai Stevenson Dr
Springfield, IL 62703 USA

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Lonero Engineering Co., Inc. | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2050 Stephenson Hwy | Troy | MI | 48083 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| U.S. Small Business Administration | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2 North Street, Suite 320 | Birmingham | AL | 35203 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

**All tangible and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) instruments, including promissory notes (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The security interest Borrower grants includes all accessions, attachments, accessories, parts, supplies and replacements for the Collateral, all products, proceeds and collections thereof and all records and data relating thereto. 990718 8008**

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility   6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
[192914941]

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

Michigan Department of State - Uniform Commercial Code

**Filing Number: 20201201000271-8**

Filing Date and Time: 12/01/2020 10:30 AM

Total Number of Pages: 2

*(This document was filed electronically)*

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Jennifer DuCharme

**B. E-MAIL CONTACT AT FILER (optional)**
jdd@dmms.com

**C. SEND ACKNOWLEDGEMENT TO: (Name and Address)**
Jennifer DuCharme
39533 Woodward Ave
Suite 200
Bloomfield Hills, MI 48304 USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Lonero Engineering Co., Inc. | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 1c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 2050 Stephenson Highway | Troy | MI / 48083 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 2c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Great Lakes Business Credit, LLC | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 3c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 1700 West Big Beaver Road  Suite 235 | Troy | MI / 48084 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

All of the following personal property and business assets now owned or later acquired by Debtor, wherever located:

All accounts, general intangibles, chattel paper (including without limit electronic chattel paper and tangible chattel paper), contract rights, deposit accounts, documents, instruments and rights to payment evidenced by chattel paper, documents or instruments, health care insurance receivables; commercial tort claims, letters of credit, letter of credit rights, supporting obligations, and rights to payment for money or funds advanced or sold), all Inventory, all Equipment and Fixtures, all (i) computer programs and supporting information provided in connection with a transaction relating to the program, and (ii) computer programs embedded in goods and any supporting information provided in connection with a transaction relating to the program whether or not the program is associated with the goods in such a manner that it customarily is considered part of the goods, and whether or not, by becoming the owner of the goods, a person acquires a right to use the program in connection with the goods, and whether or not the program is embedded in goods that consist solely of the medium in which the program is embedded), all investment property (including, without limit, securities, securities entitlements, and financial assets), all goods, instruments, (including, without limit, promissory notes), documents (including, without limit, negotiable documents), policies and certificates of insurance, deposit accounts, and money or other property (except real property which is not a fixture) which are now or later in possession of Secured Party, or as to which Secured Party now or later controls possession by documents or otherwise, and all additions, attachments, accessions, parts, replacements, substitutions, renewals, interest, dividends, distributions, rights of any kind (including but not limited to stock splits, stock rights, voting and preferential rights), products, and proceeds of or pertaining to the above including, without limit, cash or other property which were proceeds that are recovered by a bankruptcy trustee or otherwise as a preferential transfer by Debtor. A reference to a type of collateral shall not be limited by a separate reference to a more specific or narrower type of that collateral. All terms herein have the meanings assigned to them in the Uniform Commercial Code, as those meanings may be amended, revised or replaced from time to time. "Uniform Commercial Code" means Act No. 174 of the Michigan Public Acts of 1962, as amended, revised or replaced from time to time, including without limit as amended by Act No. 348 of the Michigan Public Acts of 2000. The terms used herein which are defined in the Uniform Commercial Code shall have, at all times, the broadest and most inclusive meanings possible.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

| 6a. Check only if applicable and check only one box: | | | 6b. Check only if applicable and check only one box: | |
|---|---|---|---|---|
| ☐ Public-Finance Transaction | ☐ Manufactured-Home Transaction | ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien | ☐ Non-UCC Filing |

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

Michigan Department of State - Uniform Commercial Code

**Filing Number: 20210105000965-9**

Filing Date and Time: 01/05/2021 04:15 PM

Total Number of Pages: 1

*(This document was filed electronically)*

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
| --- |
| Paige Rucha |

| B. E-MAIL CONTACT AT FILER (optional) |
| --- |
| Paige.Rucha@chemicalbank.com |

C. SEND ACKNOWLEDGEMENT TO: (Name and Address)

> Paige Rucha
> 1315 Washington Street
> Midland, MI 48640 USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ | This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |
| --- | --- | --- |
| **20180703000535-4** | | |

2. ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT** (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:     AND Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record    ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c    ☐ ADD name: Complete item 7a or 7b, and item 7c    ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

| | 6a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- | --- |
| OR | | | | |
| | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | 7a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- | --- |
| OR | | | | |
| | 7b. INDIVIDUAL'S SURNAME | | | |
| | INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |

8. ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN collateral

Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| | 9a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- | --- |
| | **TCF National Bank** | | | |
| OR | 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:

**Lonero Engineering Co Inc / Scott Dorn**

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

Michigan Department of State - Uniform Commercial Code

**Filing Number:** 20210920000710-2

Filing Date and Time: 09/20/2021 04:23 PM

Total Number of Pages: 1

*(This document was filed electronically)*

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
**Great Lakes Business Credit**

**B. E-MAIL CONTACT AT FILER (optional)**
gpawlenko@greatlakesbusinesscredit.com

**C. SEND ACKNOWLEDGEMENT TO:** (Name and Address)

**Great Lakes Business Credit**
**900 Wilshire Drive, Suite 305**
**Troy, MI 48084 USA**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] |
|---|---|
| **20201201000271-8** | (or recorded) in the REAL ESTATE RECORDS<br>Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT** (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☑ **PARTY INFORMATION CHANGE:**

Check one of these two boxes: AND Check one of these three boxes to:

This Change affects ☐ Debtor or ☑ Secured Party of record
☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b; and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **Great Lakes Business Credit, LLC** | | | |

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | |
|---|---|---|
| **Great Lakes Business Credit, LLC** | | |

OR

| 7b. INDIVIDUAL'S SURNAME | | |
|---|---|---|
| | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| **900 Wilshire Drive Suite 305** | **Troy** | **MI** | **48084** | **USA** |

8. ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **Great Lakes Business Credit, LLC** | | | |

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

10. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
**Great Lakes Business Credit**

B. E-MAIL CONTACT AT FILER (optional)
**gpawlenko@greatlakesbusinesscredit.com**

C. SEND ACKNOWLEDGEMENT TO: (Name and Address)
**Great Lakes Business Credit**
**900 Wilshire Drive, Suite 305**
**Troy, MI 48084 USA**

Michigan Department of State - Uniform Commercial Code

**Filing Number: 20230601000629-7**

Filing Date and Time: 06/01/2023 03:06 PM

Total Number of Pages: 1

*(This document was filed electronically)*

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
**20201201000271-8**

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT** (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☑ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:

This Change affects ☐ Debtor or ☑ Secured Party of record

AND Check one of these three boxes to:
☑ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **Great Lakes Business Credit, LLC** | | | |
| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **Bridge Business Credit, LLC** | | | |
| 7b. INDIVIDUAL'S SURNAME | | | |
| | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| **900 Wilshire Drive, Suite 305** | **Troy** | **MI** | **48084** | **USA** |

8. ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **Great Lakes Business Credit, LLC** | | | |
| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

Michigan Department of State - Uniform Commercial Code

**Filing Number:** 20230630000234-5

Filing Date and Time: 06/30/2023 10:39 AM

Total Number of Pages: 1

*(This document was filed electronically)*

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Denise Ann Pietras

**B. E-MAIL CONTACT AT FILER (optional)**
dap@h2law.com

**C. SEND ACKNOWLEDGEMENT TO:** (Name and Address)
Denise Ann Pietras
450 W 4th St
Royal Oak, MI 48067 USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
20180703000535-4

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT** (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☑ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes: **AND** Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record

☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b; and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

OR

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

OR

| 7a. ORGANIZATION'S NAME | | |
|---|---|---|
| 7b. INDIVIDUAL'S SURNAME | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☐ **COLLATERAL CHANGE: Also check one of these four boxes:** ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| The Huntington National Bank, successor by merger to TCF National Bank | | | |
| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
#013957-00047

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

Michigan Department of State - Uniform Commercial Code

Filing Number: 20230717000146-9

Filing Date and Time: 07/17/2023 10:35 AM

Total Number of Pages: 1

*(This document was filed electronically)*

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
| **Denise Ann Pietras** |

| B. E-MAIL CONTACT AT FILER (optional) |
| dap@h2law.com |

C. SEND ACKNOWLEDGEMENT TO: (Name and Address)
**Denise Ann Pietras**
**450 W 4th St**
**Royal Oak, MI 48067 USA**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
**20180703000535-4**

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record]
(or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☑ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ ASSIGNMENT (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ PARTY INFORMATION CHANGE:
Check one of these two boxes: AND Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record
☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☐ COLLATERAL CHANGE: Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **The Huntington National Bank** | | | |
| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
**#013937-47**

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

# Exhibit C

# SALE-LEASEBACK
## STRATEGY & ANALYSIS

### LONERO ENGINEERING CO.

*PREPARED FOR:*

**ANDY PRZEKOP**
Taurean Capital, LLC

*PREPARED BY:*

**LUKE C. TIMMIS**
Principal | Investment Division

**CADE KOZLOWSKI**
Senior Associate | Investment Division

# TABLE OF CONTENTS

## INTRO:

Executive Overview ....................................... 3
Property & SLB Market Summary ................. 4

## SALE-LEASEBACK:

Timeline & Process ..................................... 5
Lease Abstract ............................................. 6
Opinion of Value .......................................... 7

## CONSIDERATIONS:

Diligence Checklist ...................................... 8
Investor Types ............................................. 9
Value Drivers ............................................... 10

## ABOUT SIGNATURE:

The SLB Team ............................................. 11
Transaction History ..................................... 12
Advisory Expertise ...................................... 13 - 14

# INTRO: EXECUTIVE OVERVIEW





**BACKGROUND:** The sale-leaseback analysis included herein will assess the property occupied by Lonero Engineering Co. ("Lonero"), a specialized precision CNC machine shop. Founded in 1951, Lonero boasts over 70 years of expertise, utilizing a synergistic blend of CNC milling, turning, and mill-turn centers with live tooling solutions, alongside CNC grinding and Swiss machining capabilities. The toolmaker develops and manufactures complex components, custom tooling, and engineered fixtures for a variety of industrial and commercial applications. The purpose of the subject analysis is to explore the opportunity for the Signature Team to facilitate a sale-leaseback transaction on behalf of Lonero.

**PROPERTY:** The subject property is a light industrial manufacturing building totaling +/- 18,750 square feet on 1.33 acres in Troy, MI. Constructed in 1969 as a 12,000 square foot building, the property expanded in 1984 with the addition of a 6,000 square foot industrial area at the rear. The building includes a two story 4,000 square foot office space (21% of the site) that underwent a complete renovation in 2018, as well as a new roof installation in 2017. More information regarding the asset can be found on the 'Intro: Property & SLB Market Summary' page (pg. 4).

**LEASE STRUCTURE:** The enclosed sale-leaseback analysis assumes Lonero Engineering Co. will execute a 15-year absolute net lease on 18,750 square feet at a proposed rate of $8.50 per square foot, with 3.00% annual escalations (year-one rent of $159,375). The lease terms assumed for the analysis are considered the 'gold standard' in the sale-leaseback market and will result in the highest level of investor interest for the asset. More information regarding the lease structure can be found on the 'Sale-Leaseback: Lease Abstract' page (pg. 6).

**TENANT FINANCIALS:** Currently, the financials of Lonero are unknown, but will have a direct impact on valuation. It is important to note that institutional investors heavily weigh a tenant's/guarantor's credit profile and ability to cover the rental obligation over the term of the lease, while maintaining a strong fixed coverage ratio.

**PRICING:** A range of values based on varying lease and cap rates can be found on the 'Sale-Leaseback: Opinion of Value' page (pg. 7).

# INTRO: PROPERTY & SLB MARKET SUMMARY

**U.S. SALE-LEASEBACK MARKET:** The sale-leaseback has become one of the most institutionally sought-after transaction types over the past few years as a result of various global economic factors that have created uncertainty in traditional real estate asset classes, stimulating investors to redeploy capital into properties leased to strong tenants on a long-term basis. Over the past +/- 24 months, investors have been paying increased attention to interest rate movement, which directly affects pricing. While hikes in U.S. federal interest rates have occurred incrementally over time, we continue to see an influx of capital from the buyer pool focused on single-tenant net-leased industrial properties, (and a limited number of opportunities currently available).

Our team has been at the forefront of market movement (with 6 active sale-leaseback engagements), and we have started to see cap rates stabilize over the past 120 days, as investors gain more confidence in the interest rate environment. Additionally, values remain high from a historical standpoint for industrial/manufacturing product, as rental rates and construction costs have steadily grown over the past decade.



| ADDRESS | YEAR BUILT | LAND AREA (ACRES) | SQUARE FOOTAGE | CLEAR HEIGHT | DRIVE-IN DOORS | PROPOSED ANNUAL RENT PSF | PROPOSED ANNUAL RENT BASE |
|---|---|---|---|---|---|---|---|
| 2050 Stephenson Hwy Troy, MI | 1969 / 1984 | 1.33 | 18,750 | 18' - 20' | 2 | $8.50 | $159,375 |

# SALE-LEASEBACK: TIMELINE & PROCESS



**DAY 1**
OPPORTUNITY RELEASED TO MARKET

**DAY 23**
CALL FOR OFFERS DATE

**DAY 30**
BEST-&-FINAL OFFERS ARE DUE

**DAY 31**
WINNING OFFER IS SELECTED; LOI EXECUTED. DUE DILIGENCE BEGINS

**DAY 61**
DUE DILIGENCE EXPIRES; CLOSING PERIOD BEGINS

**DAY 75**
CLOSING DATE

## PROCESS OVERVIEW

The timeline shown above (for discussion purposes) coincides with the Signature Sale-Leaseback Team's typical disposition strategy. It should be noted, however, that we often further compress our process to 45 days to accommodate ongoing M&A transactions. Summarized below, the Signature Team administers a robust bid process comprised of qualified, sale-leaseback focused investment groups.

Our team's sole objective during the marketing period is to create a highly-competitive buyer pool by generating executed confidentiality agreements and educating all qualified prospects about the opportunity. Among our vast buyer database, opportunities generally receive high interest from institutional real estate investors including REITs, real estate private equity firms, and well-capitalized privately-held real estate firms. Based on the current state of the single tenant investor market and our team's vast experience in the sale-leaseback space, we would expect to generate numerous offers on the subject asset.

The marketing period encompasses a total of three (3) weeks, beginning with the most active sale-leaseback investors from our proprietary database receiving a teaser containing high-level details on the opportunity. Upon execution of a confidentiality agreement, investors receive an offering memorandum and access to a data room.

The top investors from the initial call-for-offers, based on price and terms, are invited back to the best-and-finals round. During the best-and-finals week, we organize buyer interviews, and some groups may visit the asset.

After selection of the buyer and execution of a letter of intent, we generally anticipate a +/- 30-day due-diligence period. The most important due diligence items for the buyer are the purchase and sale agreement, lease document, third-party reports, and satisfactory review of business financials. Upon the completion of due diligence, we expect to transact after a short closing period.

# SALE-LEASEBACK: LEASE ABSTRACT

## LEASE ABSTRACT
The subject property will be 100% leased to Lonero Engineering Co. on an absolute net basis

## LEASE SCHEDULE

| RENT PERIOD | YEARLY RENT PAYMENT | RENT PER SQUARE FEET |
|---|---|---|
| YEAR 1 | $159,375 | $8.50 |
| YEAR 2 | $164,156 | $8.76 |
| YEAR 3 | $169,081 | $9.02 |
| YEAR 4 | $174,153 | $9.29 |
| YEAR 5 | $179,378 | $9.57 |
| YEAR 6 | $184,759 | $9.85 |
| YEAR 7 | $190,302 | $10.15 |
| YEAR 8 | $196,011 | $10.45 |
| YEAR 9 | $201,891 | $10.77 |
| YEAR 10 | $207,948 | $11.09 |
| YEAR 11 | $214,187 | $11.42 |
| YEAR 12 | $220,612 | $11.77 |
| YEAR 13 | $227,231 | $12.12 |
| YEAR 14 | $234,048 | $12.48 |
| YEAR 15 | $241,069 | $12.86 |

## TENANT / GUARANTOR
Lonero Engineering Co.

## LEASE SIGN DATE
Upon Disposition

## LEASE TERM
15 Years

## LEASE STRUCTURE
Absolute Net Lease

## RENT INCREASES
3.00% Yearly Increases

## RENEWAL OPTION
Tenant shall retain the option to renew the lease for four (4) additional five (5) year terms.

## LANDLORD RESPONSIBILITIES
Landlord shall not have any responsibilities pertaining to the building including, but not limited to, payment of operating expenses, maintenance of roof, outer wall, parking lot, and HVAC units, or payment and replacement of any and all capital items as understood by generally accepted accounting practices.

## TENANT RESPONSIBILITIES
Tenant shall pay respective vendors directly for all operating expenses including, but not limited to, real estate taxes, building insurance, interior and exterior maintenance, utilities, and any other cost incurred by use of the premises. Tenant shall, at its own cost and expense, keep and maintain all parts of the premises including windows, glass, doors, interior and exterior walls, floors, HVAC, plumbing, roof, and parking lot. Tenant is responsible for all capital replacements including HVAC, roof, four outer walls, and parking lot.

# SALE-LEASEBACK: OPINION OF VALUE

| TARGET PRICE: | $1,770,833 |
| --- | --- |
| PROPOSED LEASE RATE: | $8.50 per sq. ft. |
| PRICE PER SQUARE FOOT: | $94.44 |
| CAP RATE: | 9.00% |

## FINANCIALS

| | PRO FORMA | PSF |
| --- | --- | --- |
| **INCOME:** | | |
| Rental Income | $159,375 | $8.50 |
| **EFFECTIVE GROSS INCOME** | **$159,375** | **$8.50** |
| **OPERATING EXPENSES:** | | |
| Real Estate Taxes | | |
| Insurance | | |
| Utilities | | |
| CAM | | |
| Property Management | | |
| CAPEX Reserve | | |
| Total Expenses | $0 | $0.00 |
| **NET OPERATING INCOME** | **$159,375** | **$8.50** |

ABSOLUTE NNN

## VALUATION MATRIX

| CAP RATE / RENT PSF | $8.00 | $8.25 | $8.50 |
| --- | --- | --- | --- |
| **9.00%** | $1,666,667 | $1,718,750 | $1,770,833 |
| **9.25%** | $1,621,622 | $1,672,297 | $1,722,973 |
| **9.50%** | $1,578,947 | $1,628,289 | $1,677,632 |
| **9.75%** | $1,538,462 | $1,586,538 | $1,634,615 |

## PROPOSED RENT STRUCTURE

| TENANT | NRA | LEASE START DATE | LEASE END DATE | ANNUAL RENT PSF | ANNUAL BASE RENT | LEASE TYPE | ANNUAL % INCREASES | EXTENSION OPTIONS |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Lonero Engineering Co., | 18,750 | Upon Sale | 15 Years | $8.50 | $159,375 | Absolute Net | 3.00% | 4, 5-Year |

Signature Associates does not imply that this Opinion of Value is a full-certified appraisal and statement of fact. The final negotiated sale price may be higher or lower than stated here. Other brokers, certified appraisers, etc. may have differing opinions. Further, this Opinion of Value may not be used for applying for and/or receiving financing or for pending litigation.

# CONSIDERATIONS: DILIGENCE CHECKLIST




**MATERIALS TO-BE REQUESTED →**

1. Trailing three-year financials (audited or CPA-reviewed)
2. Projected financials for 2024, 2025, 2026 // Post SLB proforma financials
3. Summary of current debt terms
4. Customer / revenue breakdown
5. Company organizational / entity structure chart
6. Floor plans
7. Building mechanical plans
8. Building electrical plans
9. List of recent updates to the property
10. List of major equipment in the building
11. Warranties (roof, HVAC, etc.)
12. Survey(s)
13. Site plan(s)
14. Environmental report(s)
15. Certificates of insurance
16. Title commitments
17. Easement documents on file (if any)
18. Certificate of occupancy
19. 2023/2024 property tax bills



# CONSIDERATIONS: INVESTOR TYPES

## 1. INSTITUTIONAL

Institutional investors are comprised of public and private REITs (real estate investment trusts), private equity firms, and other well-capitalized investment firms focused on the acquisition of single-tenant assets, specifically sale-leasebacks. Institutional buyers often use lines of credit to close on an all-cash basis with no financing contingencies. Additionally, institutional firms carry the highest level of sophistication and can close transactions quickly due to in-house capabilities. Institutional investors are known to provide the highest level of certainty due to the strength of their balance sheets and transaction experience, as many of these firms are closing on over $1 billion of sale-leaseback transaction volume in a given calendar year.

## 2. PRIVATE INVESTMENT FIRMS

Private investment firms have the same sophistication as an institutional group, but typically do not have the same capital backing. Examples of private investment firms include large family offices, developers, syndication groups, and more. Private firms usually have a higher cost of capital than an institutional group, and therefore must achieve a higher cap rate to compensate. Sometimes private firms raise capital on a deal-by-deal basis; thus, it can take longer to close than with an institutional firm. However, they typically have very solid banking relationships. Private investment firms generally participate in processes for transactions up to $30 million. We usually expect an equal mix of bids from both private and institutional groups for transactions less than $10 million.

## 3. PRIVATE CAPITAL

The private capital investment profile is comprised of small family offices and individuals focused on buying real estate secured by long-term leases. More often than not, private capital investors require financing to close a transaction. Some are seeking a replacement property to fulfill a 1031 exchange and will often pay a premium to avoid taxes on capital gains. Private capital buyers do not have the same internal infrastructure as an institutional or private firm solely dedicated to real estate transactions. A private capital buyer generally has less bandwidth, requiring more due diligence and closing time to successfully transact. Private capital investors typically participate in processes for transactions less than $10 million. on.

# CONSIDERATIONS: VALUE DRIVERS

## COMPANY CREDIT

The **single-most important** metric for analyzing the value of a sale-leaseback transaction is company credit. Investors analyze the company financial statements to determine the strength of a prospective tenant and their ability to pay rent over the course of the lease. Investors place heavy weight on rent coverage, EBITDA margin, diversity and reliability of revenue lines, as well as micro & macro-economic factors affecting the business/industry.

## LEASE TERM

Typically, institutional investors require at least a 15-year term for sale-leasebacks, as this leads to the most attractive financing terms. Although institutional investors do not use financing to close transactions, they typically do so after closing. While some investors may consider shorter lease terms, it often comes at the expense of a lower valuation. Simply put, the lease term can have a notable impact on the buyer pool and cap rate.

## BRICK & MORTAR

Investors place a significant weight on the brick-and-mortar quality of an asset. As one would expect, newer buildings with strong residual value demand higher valuations than older buildings with potential future capex exposure. Additionally, user-specific buildings with unique or ornate features that do not coincide with the surrounding market, typically do not receive maximum investor interest.

## LEASE RATE vs. MARKET

While higher rent typically results in higher proceeds upon sale, investors require that the lease rate reflects that of comparable buildings in the market, given an investor may need to re-lease the asset in the future. The cap rate can be negatively affected when the lease rate appears higher than that of similar buildings.

## SUBJECT MARKET

Investors always perform an in-depth analysis of the surrounding market, not only to justify the price and lease rate, but also to gauge the severity of a potential downside scenario. From an investor's perspective, key indicators include, but are not limited to, regional demographics, overall market size from a square footage standpoint, historical occupancy rates, and leasing velocity.

# ABOUT SIGNATURE: THE SLB TEAM



Signature Associates was founded in 1989 as a leading full-service commercial real estate firm and has completed over $25 billion in transaction volume to date. Signature provides a wide range of services including industrial, office and retail brokerage, investment sales, sale-leaseback advisory, property/asset management, strategic consulting, and portfolio advisory services.

The Signature platform has served as the backbone of the Sale-Leaseback Team which was launched for purpose of collaborating with private equity sponsors, M&A advisors, and public/private companies across North America to unlock capital through real estate.

The Signature Sale-Leaseback Team's unique approach creates highly competitive bid processes through our robust network of the industry's most credible and sophisticated capital partners. With a proven track record of executing complex transactions under accelerated timelines, the Signature Sale-Leaseback Team develops tailored solutions that ensure an optimal outcome for the client.

## CLIENTS WE WORK ALONGSIDE

|  | | |
|---|---|---|
| PRIVATE EQUITY SPONSORS | M & A ADVISORS | PUBLIC & PRIVATE COMPANIES |
| Facilitating seamless real estate solutions on both the front end of acquisitions and with existing portfolio companies to allow sponsors the ability to focus on operational expertise | Providing underwriting analyses for pitch decks & CIMs to give investment bankers the opportunity to maximize enterprise value while offering a wider range of creative capital solutions | Strategically unlocking capital for businesses in an offensive manor by extracting stagnant equity and reducing debt, while preserving long-term real estate control |





# ABOUT SIGNATURE: TRANSACTION HISTORY



# ABOUT SIGNATURE: ADVISORY EXPERTISE

# LUKE TIMMIS

## PRINCIPAL | INVESTMENT DIVISION



 ltimmis@signatureassociates.com

 DIRECT: +1 (248) 359-0608     CELL: +1 (248) 978-5421

## EXPERIENCE

Luke specializes in investment sale transactions with a primary focus on single-tenant net-lease and sale-leaseback transactions nationally. Luke founded The Sale-Leaseback Team in 2015 and has been responsible for over $800 million of transactions in that span.

In 2016, Griffin Pitcher was recruited to the platform, and since then the two have become the #1 investment professionals companywide. The team gained significant traction in 2018 as they provided sale-leaseback analyses for 24 private equity firms on the front end of 74 M&A transactions. This led to the team capturing a significant market share of the private equity-sponsored sale-leasebacks transacted nationally.

Luke graduated from Marquette University, where he majored in finance and real estate, and played defense on the school's first-ever Division 1 lacrosse team. Today, Luke coaches his high school alma mater (Brother Rice) and in five years has placed 13 student-athletes to play at the NCAA Division 1 level.

## PERSONAL AFFILIATIONS & EDUCATION

- Signature's #1 Investment Professional (2018-2023)
- World Class Club Recipient – *Signature Associates* (2015, 2017-2023)
- Diamond Club Award – *Signature Associates* (2021-2023)
- Commercial Board of Realtors (CBOR), *Member*
- Bachelor's Degree in Business Administration; *Marquette University, Finance & Real Estate*
- Marquette University Division 1 Lacrosse Team, *Member*
- James Imhoff Real Estate Scholarship, *Recipient*
- Coach – Brother Rice High School Lacrosse
- Alumnus – Brother Rice High School

## PARTIAL CLIENT LIST

- Agracel, Inc.
- Crestlight Capital
- Damico Contracting Inc.
- Founders Properties
- Four Springs Capital Trust
- Gladstone Commercial
- J.B. Donaldson Company
- J.D. Dinan Company
- LCN Capital Partners
- Lexington Realty Company
- Princeton Management
- STORE Capital
- ValStone Partners
- W.P. Carey

# ABOUT SIGNATURE: ADVISORY EXPERTISE



# CADE KOZLOWSKI

## SENIOR ASSOCIATE | INVESTMENT DIVISION

 ckozlowski@signatureassociates.com

☏ DIRECT: +1 (248) 359-0607    CELL: +1 (734) 626-7220

## EXPERIENCE

Cade is a member of the Sale-Leaseback Team, specializing in single-tenant net-lease transactions and private equity sponsored sale-leasebacks across North America. Cade has successfully closed over $600 million of transactions since joining the team full-time in May of 2021.

He started at Signature Associates as an intern for the Sale-Leaseback Team in the summer of 2019, and rejoined in 2020 as a part-time intern.

Cade attended the Eli Broad College of Business at Michigan State University, where he graduated with honors. At Michigan State, Cade was a member of the Honors College, Financial Markets Institute, and President of the Alternative Investments Group.

## PERSONAL AFFILIATIONS & EDUCATION

- Bachelor in Finance, Eli Broad College of Business, *Michigan State University*
- Financial Markets Institute, *Member*
- Honors College, *Member*
- Alternative Investments Group, *Co-Founder, Former President*
- Detroit Catholic Central High School, *Alumnus*

## PARTIAL CLIENT LIST

- Agracel, Inc.
- Crestlight Capital
- Four Springs Capital Trust
- Gladstone Commercial
- LCN Capital Partners
- Lexington Realty Trust
- Mangrove Equity Partners
- Princeton Enterprises
- Brennan Investment Group
- Prophet Equity
- STORE Capital
- Fortress Investment Group
- Strategic Lease Partners
- TPG Angelo Gordon
- W.P. Carey
- Wynnchurch Capital



NOVEMBER · 2024 · 2050 STEPHENSON HWY



## SIGNATURE ASSOCIATES
KNOW SIGNATURE | KNOW RESULTS

FOR ADDITIONAL INFORMATION CONTACT:

### LUKE C. TIMMIS
Principal | Investment Division
(248) 359 0608
ltimmis@signatureassociates.com

### CADE KOZLOWSKI
Senior Associate | Investment Division
(248) 359 0607
ckozlowski@signatureassociates.com

WWW.SIGNATURESLB.COM

# Exhibit D

**Lonero Engineering**
**13 WEEK ROLLING CASH FLOW FORECAST**
**For the Period Ending April 3, 2025**

| Description / Cash Receipts | Total | Fcst. Week beg. 3-Jan | Fcst. Week beg. 10-Jan | Fcst. Week beg. 17-Jan | Fcst. Week beg. 24-Jan | Fcst. Week beg. 31-Jan | Fcst. Week beg. 7-Feb | Fcst. Week beg. 14-Feb | Fcst. Week beg. 21-Feb | Fcst. Week beg. 28-Feb | Fcst. Week beg. 7-Mar | Fcst. Week beg. 14-Mar | Fcst. Week beg. 21-Mar | Fcst. Week beg. 28-Mar |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AR estimated average collections | 676,603 | 111,579 | 75,563 | 67,879 | 83,596 | 27,547 | 78,588 | 92,889 | 441 | 26,769 | 33,172 | - | 22,402 | 56,178 |
| Cash Receipts New Sales | 430,000 | - | - | - | - | - | - | - | 65,000 | 80,000 | 80,000 | 80,000 | 50,000 | 75,000 |
| Other | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total cash receipts** | **1,106,603** | **111,579** | **75,563** | **67,879** | **83,596** | **27,547** | **78,588** | **92,889** | **65,441** | **106,769** | **113,172** | **80,000** | **72,402** | **131,178** |
| **Cash Used for DL&DM (Does not include MOH)** | | | | | | | | | | | | | | |
| Direct materials | 105,600 | 7,800 | 9,600 | 9,600 | 9,600 | 6,000 | 9,000 | 9,000 | 6,000 | 6,000 | 6,000 | 9,000 | 9,000 | 9,000 |
| Freight & Duty | 20,800 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 |
| Direct Labor | 279,717 | 19,053 | 21,722 | 21,722 | 21,722 | 21,722 | 21,722 | 21,722 | 21,722 | 21,722 | 21,722 | 21,722 | 21,722 | 21,722 |
| Outsourcing | 26,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| **Total DL&DM** | **432,117** | **30,453** | **34,922** | **34,922** | **34,922** | **31,322** | **34,322** | **34,322** | **31,322** | **31,322** | **31,322** | **34,322** | **34,322** | **34,322** |
| **Cash flow before MOH & Admin** | **674,486** | **81,126** | **40,641** | **32,957** | **48,674** | **(3,775)** | **44,266** | **58,567** | **34,119** | **75,447** | **81,850** | **45,678** | **38,080** | **96,856** |
| **Cash disbursements** | | | | | | | | | | | | | | |
| Salaries admin | 139,367 | 9,311 | 10,838 | 10,838 | 10,838 | 10,838 | 10,838 | 10,838 | 10,838 | 10,838 | 10,838 | 10,838 | 10,838 | 10,838 |
| Travel & Enter. | 1,300 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 |
| Taxes | 17,144 | 2,144 | | | | | | | | 15,000 | | | | |
| Professional fees | 65,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Utility Deposit | 7,000 | | 7,000 | | | | | - | | | | | - | |
| Insurance | 101,484 | | 33,828 | | | | 5,828 | 28,000 | | | | | 33,828 | |
| Information technology | 28,212 | - | 2,100 | 404 | 6,900 | - | 2,100 | - | 404 | 6,900 | - | 2,100 | 404 | 6,900 |
| Contract Engineering | 4,500 | - | - | - | 1,500 | - | - | - | - | 1,500 | - | - | - | 1,500 |
| Other | 32,523 | 155 | 30,663 | 155 | 155 | 155 | 155 | 155 | 155 | 155 | 155 | 155 | 155 | 155 |
| SBA Adequate Protection | 11,823 | - | 986 | - | - | - | - | 986 | - | - | - | 9,851 | - | - |
| Bridge Adequate Protection | 58,938 | 19,646 | - | - | - | - | 19,646 | - | - | - | 19,646 | - | - | - |
| Backpayment AP | 59,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 23,000 | 3,000 | 3,000 | 3,000 |
| Heat, light & water | 24,500 | - | - | 7,500 | - | - | - | 8,500 | - | - | - | 8,500 | - | - |
| Equipment leases | 1,200 | - | - | 400 | - | - | 400 | - | - | - | 400 | - | - | - |
| Repairs & maintenance | 6,500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| Total disbursements | 558,491 | 39,856 | 94,015 | 27,897 | 27,993 | 19,593 | 47,567 | 57,483 | 26,493 | 36,093 | 61,739 | 72,176 | 26,493 | 21,093 |
| | 990,608 | 70,309 | 128,937 | 62,819 | 62,915 | 50,915 | 81,889 | 91,805 | 57,815 | 67,415 | 93,061 | 106,498 | 60,815 | 55,415 |
| **Net cash flow from current operations** | **115,995** | **41,270** | **(53,374)** | **5,060** | **20,681** | **(23,368)** | **(3,301)** | **1,084** | **7,626** | **39,354** | **20,111** | **(26,498)** | **11,587** | **75,763** |
| Additional investment- pending | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Net cash flow | | 41,270 | (53,374) | 5,060 | 20,681 | (23,368) | (3,301) | 1,084 | 7,626 | 39,354 | 20,111 | (26,498) | 11,587 | 75,763 |
| Beginning cash balance | | 28,000 | 69,270 | 15,896 | 20,956 | 41,637 | 18,269 | 14,968 | 16,052 | 23,678 | 63,032 | 83,143 | 56,645 | 68,232 |
| **Ending cash balance** | | **69,270** | **15,896** | **20,956** | **41,637** | **18,269** | **14,968** | **16,052** | **23,678** | **63,032** | **83,143** | **56,645** | **68,232** | **143,995** |
| **Cash Collateral:** | | | | | | | | | | | | | | |
| Cash | | 69,270 | 15,896 | 20,956 | 41,637 | 18,269 | 14,968 | 16,052 | 23,678 | 63,032 | 83,143 | 56,645 | 68,232 | 143,995 |
| Accounts Receivable | | 630,020 | 634,457 | 646,578 | 642,982 | 665,435 | 661,848 | 643,958 | 628,517 | 571,748 | 508,576 | 503,576 | 506,174 | 449,996 |
| Inventory | | 1,037,949 | 1,035,549 | 1,033,149 | 1,030,749 | 1,029,249 | 1,026,999 | 1,024,749 | 1,023,249 | 1,021,749 | 1,020,249 | 1,017,999 | 1,015,749 | 1,013,499 |
| **Total** | | **1,737,239** | **1,685,902** | **1,700,683** | **1,715,368** | **1,712,953** | **1,703,814** | **1,684,759** | **1,675,444** | **1,656,529** | **1,611,968** | **1,578,220** | **1,590,155** | **1,607,490** |

**Management Estimates**

| Accounts receivable rollforward | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning balance | | 676,599 | 630,020 | 634,457 | 646,578 | 642,982 | 665,435 | 661,848 | 643,958 | 628,517 | 571,748 | 508,576 | 503,576 | 506,174 |
| Add sales | 880,000 | 65,000 | 80,000 | 80,000 | 80,000 | 50,000 | 75,000 | 75,000 | 50,000 | 50,000 | 50,000 | 75,000 | 75,000 | 75,000 |
| Less collections | (1,106,603) | (111,579) | (75,563) | (67,879) | (83,596) | (27,547) | (78,588) | (92,889) | (65,441) | (106,769) | (113,172) | (80,000) | (72,402) | (131,178) |
| Ending balance | | 630,020 | 634,457 | 646,578 | 642,982 | 665,435 | 661,848 | 643,958 | 628,517 | 571,748 | 508,576 | 503,576 | 506,174 | 449,996 |

| Eligible inventory | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning balance | | 1,039,899 | 1,037,949 | 1,035,549 | 1,033,149 | 1,030,749 | 1,029,249 | 1,026,999 | 1,024,749 | 1,023,249 | 1,021,749 | 1,020,249 | 1,017,999 | 1,015,749 |
| Add purchases | 105,600 | 7,800 | 9,600 | 9,600 | 9,600 | 6,000 | 9,000 | 9,000 | 6,000 | 6,000 | 6,000 | 9,000 | 9,000 | 9,000 |
| Less cost of sales | | (9,750) | (12,000) | (12,000) | (12,000) | (7,500) | (11,250) | (11,250) | (7,500) | (7,500) | (7,500) | (11,250) | (11,250) | (11,250) |
| Ending balance | | 1,037,949 | 1,035,549 | 1,033,149 | 1,030,749 | 1,029,249 | 1,026,999 | 1,024,749 | 1,023,249 | 1,021,749 | 1,020,249 | 1,017,999 | 1,015,749 | 1,013,499 |

# Exhibit E

RUN powered by ADP

*101 - Lonero Hourly*

| Employee name | Type | Total hours | Gross pay | Taxes | Deductions | Net pay | Employer taxes |
|---|---|---|---|---|---|---|---|
| BURTELL, PHILLIP M | Regular | 48.75 | $1,605.29 | $423.65 | $3.81 | $1,177.83 | $122.81 |
| CUDNEY, AMANDA M | Regular | 0.00 | $301.92 | $41.31 | $1.92 | $258.69 | $22.95 |
| DIACONESCU, CATALIN G | Regular | 50.00 | $946.54 | $172.34 | $11.54 | $762.66 | $71.53 |
| HALEY, JOHN R | Regular | 47.50 | $1,569.42 | $410.87 | $1.92 | $1,156.63 | $119.92 |
| KHAMO, GEORGINS Y | Regular | 48.00 | $1,415.54 | $279.87 | $31.85 | $1,103.82 | $107.41 |
| LUTERAN, MATTHEW L | Regular | 19.50 | $780.00 | $153.61 | $0.00 | $626.39 | $59.67 |
| NIEMI, ERIC S | Regular | 45.75 | $1,118.38 | $243.94 | $55.91 | $818.53 | $85.56 |
| NIEMI, RONALD L | Regular | 39.25 | $1,007.17 | $181.45 | $93.42 | $732.30 | $75.59 |
| NOWAKOWSKI, GREGORY | Regular | 49.00 | $1,509.54 | $324.69 | $243.71 | $941.14 | $114.60 |
| RAWSKI, ROBERT J | Regular | 48.00 | $1,461.77 | $284.18 | $17.31 | $1,160.28 | $110.50 |
| **Totals** | | 532.50 | $28,364.06 | $6,585.10 | $2,360.54 | $19,418.42 | $2,144.00 |

| Employee name | Type | Total hours | Gross pay | Taxes | Deductions | Net pay | Employer taxes |
|---|---|---|---|---|---|---|---|
| *101 - Lonero Hourly* | | | | | | | |
| SMITH, DONALD J | Regular | 45.00 | $1,341.54 | $256.83 | $11.54 | $1,073.17 | $101.75 |
| WALKER, SETHRIDA J | Regular | 48.00 | $1,144.00 | $217.30 | $312.48 | $614.22 | $83.03 |
| *102 - Indirect* | | | | | | | |
| PETRI, MICHAEL R | Regular | 43.75 | $1,191.64 | $248.26 | $130.70 | $812.68 | $90.28 |
| *103 - Manufacturing* | | | | | | | |
| LUTERAN, SHAWN | Regular | 0.00 | $2,282.00 | $631.84 | $176.56 | $1,473.60 | $170.09 |
| *104 - Engineering* | | | | | | | |
| GALER, SCOTT D | Regular | 0.00 | $1,377.96 | $277.07 | $27.81 | $1,073.08 | $103.58 |
| *200 - Executive* | | | | | | | |
| LONERO, TOD | Regular | 0.00 | $442.50 | $73.42 | $255.44 | $113.64 | $29.37 |
| LONERO, VINCENT J | Regular | 0.00 | $500.00 | $84.16 | $415.84 | $0.00 | $38.25 |
| *300 - Office* | | | | | | | |
| VARVATOS, PHILLIP J | Regular | 0.00 | $2,987.31 | $873.75 | $375.01 | $1,738.55 | $227.27 |
| **Totals** | | 532.50 | $28,364.06 | $6,585.10 | $2,360.54 | $19,418.42 | $2,144.00 |

RUN powered by ADP

### 301 - Administrative

| Employee name | Type | Total hours | Gross pay | Taxes | Deductions | Net pay | Employer taxes |
|---|---|---|---|---|---|---|---|
| FALENDYSZ, JOHN S | Regular | 0.00 | $475.77 | $107.90 | $10.77 | $357.10 | $35.57 |
| HETTICH, SUSAN G | Regular | 0.00 | $301.92 | $67.95 | $5.73 | $228.24 | $22.95 |
| **Totals** | | **532.50** | **$28,364.06** | **$6,585.10** | **$2,360.54** | **$19,418.42** | **$2,144.00** |

https://runpayrollmain2.adp.com/@836d254c-789b-41b8-8052-d48a639e95d8/v2/

RUN powered by ADP

| Employee name | Type | Total hours | Gross pay | Taxes | Deductions | Net pay | Employer taxes |
|---|---|---|---|---|---|---|---|
| *301 - Administrative* | | | | | | | |
| **LONERO, DEBORAH** | Regular | 0.00 | $250.00 | $108.43 | $141.56 | $0.01 | $19.13 |
| *400 - NA Sales* | | | | | | | |
| **PRINE, KYLE R** | Regular | 0.00 | $1,550.00 | $401.01 | $35.71 | $1,113.28 | $117.69 |
| *403 - Sales Admin* | | | | | | | |
| **SGALIA, JOHN T** | Regular | 0.00 | $2,803.85 | $721.27 | $0.00 | $2,082.58 | $214.50 |
| **Totals** | | 532.50 | $28,364.06 | $6,585.10 | $2,360.54 | $19,418.42 | **$2,144.00** |

Payrun total: **$30,508.06**     Cash required: **$28,147.52**

# Exhibit F

Company:  LONERO ENGINEERING CO INC
Report:  Employee Paid Time Off

| Employee Name | Hours Remaining | Rate | Total |
|---|---|---|---|
| DIACONESCU, CATALIN G | 77.00 | 17 | 1,309.00 |
| HALEY, JOHN R | 40.00 | 30 | 1,200.00 |
| KHAMO, GEORGINS Y | 32.00 | 27 | 864.00 |
| NIEMI, ERIC S | 16.00 | 23 | 368.00 |
| NIEMI, RONALD L | 16.00 | 25 | 400.00 |
| NOWAKOWSKI, GREGORY | 48.00 | 28 | 1,344.00 |
| RAWSKI, ROBERT J | 8.00 | 28 | 224.00 |
| SMITH, DONALD J | 32.00 | 28 | 896.00 |
| | | | |
| **Company Total** | **269.00** | | 6,605.00 |